UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SEBAGO LAND DEVELOPERS, INC. | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant | ) | |
| | ) | |
| v. | ) | 2:23-cv-00320-JAW |
| | ) | |
| CRUM & FORSTER SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

**ORDER ON MOTIONS FOR JUDGMENT ON THE PLEADINGS**

An insurer declined coverage, including the duty to defend, of a personal injury lawsuit against an insured on the ground that its Worker Injury Exclusion excluded coverage under its Commercial General Liability policy. Using the comparison test under Maine law, the court concludes that because the status of the plaintiff as an independent contractor would be a necessary element for each of his three causes of action against the insured in the underlying personal injury lawsuit, the insurer does not owe a duty to defend the underlying lawsuit.

I. **BACKGROUND**

A. **Procedural History**

On May 24, 2023, Marcus Hilton, a resident of the town of Wells, York County, state of Maine, filed a lawsuit in York County Superior Court for the state of Maine against Sebago Land Developers Incorporated (SLD), a Maine corporation; Hans Meier, d/b/a Hansmeier Lot Clearing, a Maine resident; and Seth Johnson, a Maine resident; claiming under various theories that each defendant was legally responsible

for serious injuries Mr. Hilton sustained on January 14, 2022 when a tree fell on him. *Def. Crum & Forster Specialty Ins. Co.'s Answer, Affirmative Defenses, and Countercl.*, Attach. 2, *Compl.* (ECF No. 6).

On June 16, 2023, SLD filed a complaint in York County Superior Court for the state of Maine against Crum & Forster Specialty Insurance Company (Crum & Forster), a foreign insurance company authorized to do business in the state of Maine, alleging that Crum & Forster had violated its duty to defend SLD in the underlying Hilton lawsuit. *Notice of Removal*, Attach. 1, *Compl.*, Attach. 2, *State Ct. Civil Summary Sheet* (ECF No. 1). The original Complaint listed Marcus Hilton as a party in interest. *Compl.* ¶ 3. On August 16, 2023, Crum & Forster removed the SLD lawsuit to this Court asserting its diversity jurisdiction. *Id.* On August 23, 2023, Crum & Forster answered SLD's complaint and asserted a counterclaim against it. *Def. Crum & Forster Specialty Ins. Co.'s Answer, Affirmative Defenses, and Countercl.* (ECF No. 6). On August 30, 2023, SLD filed a reply to Crum & Forster's Counterclaim. *Countercl. Def. Sebago Land Dev., Inc.'s Answer to Countercl.* (ECF No. 9).

On September 14, 2023, SLD filed an unopposed motion to file an amended complaint and an amended complaint. *Pl./Countercl. Def. Sebago Land Devs., Inc.'s Unopposed Mot. to Am. Compl.* (ECF No. 17) (*SLD's Mot. to Am.*); *First Am. Compl.* (ECF No. 18). The First Amended Complaint dropped Marcus Hilton as a party in interest. *SLD's Mot. to Am.* at 1; *First Am. Compl.* at 1. The Magistrate Judge granted SLD's motion on September 14, 2023. *Order* (ECF No. 19). On September

18, 2023, Crum & Forster filed an answer to the First Amended Complaint and reasserted its counterclaim. *Def. Crum & Forster Specialty Ins. Co.'s Answer to First Am. Compl., Affirmative Defenses, and Countercl.*, (ECF No. 20) (*Crum & Forster Answer to First Am. Compl.*). On September 18, 2023, SLD filed a reply to the amended counterclaim. *Countercl. Def. Sebago Land Dev., Inc.'s Answer to Am. Countercl.* (ECF No. 21).

On October 6, 2023, SLD and Crum & Forster filed dueling motions for judgment on the pleadings. *Pl./Countercl. Def. Sebago Land Devs., Inc.'s Mot. for J. on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)* (ECF No. 24) (*SLD Mot.*); *Def. Crum & Forster's Mot. for J. on the Pleadings* (ECF No. 25). Crum & Forster also filed a separate memorandum in support of its motion.[1] *Mem. of Law in Support of Def. Crum & Forster Special Ins. Co.'s Mot. for J. on the Pleadings* (ECF No. 26) (*Crum & Forster Mem.*). On October 27, 2023, the parties each filed responses to their competing motions. *Pl./Countercl. Def. Sebago Land Devs., Inc.'s Opp'n to Def./Countercl. Pl.'s Mot. for J. on the Pleadings* (ECF No. 27) (*SLD Opp'n*); *Def. Crum & Forster Special Ins. Co.'s Opp'n to Pl. Sebago Land Devs., Inc.'s Mot. for J. on the Pleadings* (ECF No. 28) (*Crum & Forster Opp'n*). The parties did not file replies to each other's responses.

---

[1]   Crum & Forster's separate filing of a motion and memorandum is unnecessary and violates District of Maine Local Rule 7(a).  D. ME. LOC. R. 7(a) ("Every motion shall incorporate a memorandum of law, including citations and supporting authorities").

## II.   FACTUAL BACKGROUND[2]

### A.   The Underlying Complaint: *Hilton v. Sebago Land Developers, Inc.*, CV-2023-143, York County Superior Court, State of Maine

In his May 24, 2023 Complaint, Mr. Hilton alleges that on January 14, 2022, he was crushed beneath a falling tree while working on or near a land development project on Jada Drive in Saco, Maine. *Crum & Forster Answer to First Am. Compl.*, Attach. 2, *Underlying Compl.* ¶ 5 (*Hilton Compl.*). Mr. Hilton states that SLD owned and occupied the Jada Drive premises where he was working. *Id.* ¶ 6. Mr. Hilton alleges that SLD contracted with Hans Meier and other independent contractors to perform land development services, including tree and brush removal, in furtherance of a planned development on the premises. *Id.* ¶ 7. Mr. Hilton says that Mr. Meier employed an individual, Seth Johnson, for this purpose and Mr. Meier further contracted with Mr. Hilton as an independent contractor to perform the tree and brush removal work on January 14, 2022. *Id.* ¶¶ 8-9.

---

[2]     The Court considered the attachments to the pleadings in ruling on this motion, including (1) Crum & Forster's denial letter, (2) the underlying complaint, and (3) the Crum & Forster Policy insuring SLD. SLD attached the denial letter to its Complaint, and both SLD and Crum & Forster attached the underlying complaint and policy as exhibits to their pleadings.

"In considering a motion under either Fed. R. Civ. P. 12(b)(6) or 12(c), the court generally may not consider matters outside the pleadings without converting the motion to one for summary judgment. However, there are well recognized exceptions to this principle." *Pimental v. Wells Fargo Bank, N.A.*, No. 14-494S, 2015 U.S. Dist. LEXIS 120571, at *12 (D.R.I. Sept. 4. 2015), *aff'd* 2016 U.S. Dist. LEXIS 1825 (D.R.I. Jan. 5, 2016) (internal citations omitted). "In reviewing a motion under Rule 12(c), as in reviewing a Rule 12(b)(6) motion, [a court] may consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (under Rule 12(b)(6)). "This is true even when the documents are incorporated into the movant's pleadings." *Id.* (citing *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document [offered by the movant] (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it") (citing *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988)).

During the morning of January 14, 2022, Mr. Hilton states that Mr. Johnson notched a Candlestick Pine tree on SLD's premises in anticipation of knocking it down. *Id.* ¶ 10. Mr. Johnson, however, did not complete his work on the notched tree and began instead to work with Mr. Hilton on another project nearby, leaving the Candlestick Pine unattended. *Id.* ¶ 11. Mr. Hilton claims that a gust of wind knocked over the notched tree and it fell on Mr. Hilton, causing catastrophic injuries. *Id.* ¶¶ 12-14.

Mr. Hilton's Complaint contains six counts; three against SLD. *First Am. Compl.* ¶¶ 15-45. The three against SLD are: 1) Count III, duty of a general contractor; 2) Count V, negligent hiring, retention, and supervision; and 3) Count VI, premises liability. *Id.* Count III, the duty of the general contractor count, alleges that SLD was the worksite's general contractor and thus owed Mr. Hilton a duty to provide a reasonably safe environment to work. *Id.* ¶¶ 24-27. Count V, the negligent hiring count, claims that SLD knew or should have known that Hans Meier was incompetent, inadequately experienced, inadequately trained, and/or prone to imprudence, and that SLD was inadequately careful in hiring and overseeing Mr. Meier, and that consequently, Mr. Hilton suffered catastrophic injuries. *Id.* ¶¶ 34-39. Finally, Count VI, the premises liability count, states that SLD had an obligation to exercise reasonable care to provide Mr. Hilton with a reasonably safe place to work, and it failed to do so by hiring agents to perform inherently dangerous work who were incompetent, and who performed work in an incompetent manner, resulting in a

dangerous condition on the premises that caused injuries to Mr. Hilton.  *Id.* ¶¶ 40-45.

### B.      The Crum & Forster Insurance Policy

Crum & Forster issued a Commercial General Liability Policy to SLD for the policy period from January 29, 2021 to January 29, 2022.  *Crum & Forster Answer to First Am. Compl.*, Attach. 1, *Insurance Policy* (ECF No. 6) (*Policy*).  The policy contained the following insuring agreement:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.

*Id.* at Section 1(1)(A), *Coverages, Coverage A Bodily Injury and Property Damage Liability, Insuring Agreement*.

In addition to the insuring agreement, the policy contains an exclusion for worker injury.  In relevant part, the exclusion reads:

> **(3)** Any "employee" or "temporary worker" of any such contractor, subcontractor, independent contractor, or other person as a consequence of any "bodily injury" as set forth in paragraphs **a.**, **b.**, or **c.** of this endorsement
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to all claims and "suits" by any person or organization for damages because of such "bodily injury," including damages for care and loss of services and any claim under which any insured may be held liable under any Workers Compensation Law.
>
> **B. Section V – Definitions, 19**. "Temporary Worker" is deleted and replaced with the following:
>
> **"Temporary worker" means any person who is:**

6

      **a.** Furnished to you to substitute for a permanent "employee";
      **b.** A short-term worker; or
      **c.** Not an "employee" or "volunteer worker".

As used herein, the definition of "employee" includes a "leased worker," "temporary worker," and "volunteer worker".

> **ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

*Policy* at 48-49 (emphasis in original).

## III.   THE PARTIES' POSITIONS

### A.   SLD's Motion

In its motion, SLD defines its view of the legal issue as: "whether an allegation in an underlying complaint may preclude coverage even where an alleged cause of action—namely, negligence—is sufficiently broad that a modified version of the facts may fall within liability coverage." *SLD Mot.* at 4.  This legal question, SLD says, "has been answered by the federal and Maine state courts." *Id.*  In SLD's view, the First Circuit and the Maine Law Court "have held that the proper test is whether *a cause of action* may fall within coverage, not whether an allegation in a complaint may fall within a coverage exclusion." *Id.* (emphasis in original).  In support, SLD relies on *Auto Europe, LLC v. Connecticut Indemnity Company*, 321 F.3d 60 (1st Cir. 2003); *Mitchell v. Allstate Insurance Company*, 2011 ME 133, 36 A.3d 876; and other caselaw.  *Id.* at 5.  SLD summarizes:

> Under *Auto Europe* and *Mitchell*, an express allegation in a complaint that a plaintiff need not prove to prevail must be ignored in assessing the duty to defend since by definition such an allegation does not eliminate the possibility of a liability falling within coverage.

*Id.*

SLD acknowledges that Crum & Forster denied the applicability of a duty to defend based on the allegation in the Hilton Complaint that Mr. Hilton was working as a subcontractor when he was injured. *Id.* at 6. But SLD argues that Crum & Forster "conveniently ignores that the *causes of action* for negligence and premises liability alleged in the underlying complaint potentially fall within coverage under the Policy." *Id.* (emphasis in original). SLD maintains that *Auto Europe* and *Mitchell* concluded that if a plaintiff "could prevail against the insured without establishing the fact or conduct activating the exclusion, . . . a 'possibility' of liability within coverage existed." *Id.* "Whether Hilton was a subcontractor is not an element of these alleged causes of action and may not form the basis for a denial of a duty of defend." *Id.* As Crum & Forster's duty to defend is clear, SLD says it is entitled to its attorney's fees and costs. *Id.* at 7-8.

### B.    Crum & Forster's Motion

Crum & Forster relies on the so-called Worker Injury Exclusion in its insurance policy to deny its duty to defend SLD. *Crum & Forster Mem.* at 1. Crum & Forster describes the exclusion as excluding "coverage for bodily injury to any contractor, subcontractor, or independent contractor performing work on behalf of the insured." *Id.* As the Hilton Complaint alleges that, when he was injured, he was working as a subcontractor on a residential construction project on behalf of SLD, Crum & Forster says that "[t]his is precisely the type of claim excluded by the Worker Injury Exclusion." *Id.* Crum & Forster sets forth the language of the Worker Injury Exclusion in the policy and the allegations in the Hilton Complaint to conclude that

"Mr. Hilton expressly alleges that at the time he was injured, he was working as a subcontractor of Hans Meier, which was working as a subcontractor of SLD." *Id.* at 2-7. Crum & Forster argues that an insurer may decline to defend an insured if "the allegations contained in the underlying complaint fall entirely within a policy exclusion." *Id.* at 8 (quoting *True N. Me. v. Liberty Mut. Ins. Co.*, No. 1:18-cv-00333, 2019 U.S. Dist. LEXIS 25767, at *3 (D. Me. Feb. 19. 2019)) (internal citations and quotation marks omitted).

For support, Crum & Forster relies on a comparison to *Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61 (1st Cir. 2012). *Id.* at 9. It also cites a 2005 Massachusetts Appeals Court case, *Monticello Insurance Co. v. Dion*, 65 Mass. App. Ct. 46, 486 N.E.2d 1112 (2005). Even though Crum & Forster concedes that *Stolberg* and *Monticello* did not rely on exactly the same exclusion as here, Crum & Forster maintains that "the outcome should be the same." *Id.* at 10.

Finally, Crum & Forster argues that it did not violate the Maine Unfair Claims Settlement Practices Act, 24-A M.R.S. § 2436-A. *Id.* at 10-12.

## C. SLD's Opposition

In its opposition, after reemphasizing the "comparison test" as the appropriate analytic standard, SLD writes that Crum & Forster "either misunderstands this standard or seeks to disregard it." *SLD's Opp'n* at 3. SLD stresses that "[w]hether Hilton was a subcontractor, employee or temporary worker is not an element of the tort of negligence alleged against SLD in Counts III, V, & VI." *Id.* SLD observes that "[i]f SLD may be held liable for negligence, regardless of whether Hilton was a

9

subcontractor, employee, or temporary worker, then there is a factual or legal basis, which could be developed at trial, which would obligate the insurer to pay under the policy." *Id.* SLD writes that "[i]n other words, if Hilton's status is not a necessary element of the tort of negligence, then Crum & Forster would owe a duty to defend." *Id.* Citing *Gibson v. Farm Family Mutual Insurance Company*, 673 A.2d 1350, 1354 (Me. 1996), SLD says that a duty to defend a single count extends the obligation of an insurer to defend all counts. *Id.* at 3, n.1. Finally, discussing *Prime Tanning v. Liberty Mutual Insurance Company*, 750 F. Supp. 2d 198 (D. Me. 2010), SLD describes Maine law on the duty to defend as adopting a breadth not found in other jurisdictions in requiring a defense whenever there exists "any legal or factual basis which could be developed at trial which would obligate the insurers to pay under the policy." *Id.* at 4 (quoting *Prime Tanning*, 750 F. Supp. 2d at 209) (quoting *Auto Europe*, 321 F.3d at 66).

### D.    Crum & Forster's Opposition

Crum & Forster acknowledges that Maine law "generally favors the insured," but it contends that SLD "attempts to stretch this preference beyond reason." *Crum & Forster Opp'n* at 1. Crum & Forster observes that Mr. Hilton describes himself in the underlying complaint as working as a subcontractor, and it maintains that the underlying lawsuit therefore falls entirely within the Worker Injury exclusion. *Id.* at 2.

Specifically, Crum & Forster disputes whether the Maine standard for a duty to defend is whether a cause of action may fall within coverage and whether Maine

would ignore the allegations in an underlying complaint. *Id.* at 3. Crum & Forster says that if SLD's standard were the law, an insurer "could never disclaim its duty to defend on the basis of any exclusion, so long as the 'cause of action' might fall within coverage." *Id.* at 4. Crum & Forster maintains that SLD's rule would "impose a duty on liability insurers to defend any negligence action, regardless of whether the events giving rise to the complaint and the allegations in the complaint fall entirely within an exclusion." *Id.*

Instead, Crum & Forster says, the appropriate inquiry is whether the allegations in the underlying complaint "are within the risk insured against." *Id.* (quoting *Gibson*, 673 A.2d at 1352). Crum & Forster protests that "[i]n the present case, the allegations in the Underlying Complaint are not within the risk insured against, because they involve injury to a subcontractor working on SLD's behalf, a risk that is excluded from coverage by the Worker Injury Exclusion." *Id.*

Crum & Forster then turns to the nature of Mr. Hilton's allegations in the underlying complaint. *Id.* at 5-7. Crum & Forster posit that Mr. Hilton's status as an independent contractor is an essential element of each of the three counts against SLD and therefore, the Crum & Forster policy's exclusion must be enforced. *Id.* Finally, Crum & Forster contend that any duty to defend that existed was not "clear," such that SLD's request for attorney's fees and costs should be rejected. *Id.* at 7.

## IV.   LEGAL STANDARD

### A.   Rule 12(c) Motions for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings.   Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  In evaluating a motion for judgment on the pleadings, the court views "all well-pleaded facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 140 (1st Cir. 2016).  In effect, the standard for resolving a motion for judgment on the pleadings under Rule 12(c) is identical to that applicable to a motion to dismiss brought under Federal Civil Procedure Rule 12(b)(6), except that a Rule 12(c) motion implicates the allegations of all the pleadings, rather than only those of the complaint.  *See Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54-55 (1st Cir. 2006) ("A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole"); *see also Villeneuve v. Avon Prods., Inc.*, 919 F.3d 40, 43 n.2 (1st Cir. 2019) ("A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss") (quoting *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008)).

### B.   The Duty to Defend: Maine Law[3]

The general principles of Maine law on the duty to defend are well developed. "Whether an insurer has a duty to defend its insured against a complaint brought by

---

[3]     The Court has applied Maine substantive law.  The Crum & Forster policy contains no choice of law provision, and in its absence, Maine courts apply the law of the jurisdiction with the "most

a third party is a question of law." *Me. Mut. Fire Ins. Co. v. Gervais*, 1998 ME 197, ¶ 7, 715 A.2d 538 (quoting *Northern Sec. Ins. Co. v. Dolley*, 669 A.2d 1320, 1322 (Me. 1996)).  "Under Maine Law, an insurer's duty to defend is defined broadly and applied liberally."  *True N. Me.*, 2019 U.S. Dist. LEXIS 25767, at *8-9 (citing *Auto Europe*, 321 F.3d at 68 ("Maine law . . . broadly extends the duty to defend to claims that could be developed either legally or factually at trial so as to fall within the policy's coverage") and *Zurich Am. Ins. Co. v. Elec. Me. LLC*, 325 F. Supp. 3d 198, 202 (D. Me. 2018) (confirming that "the duty to defend is so broadly conceived that even legally insufficient claims may give rise to a duty to defend if it possibly fits within the policy").

"To determine whether an insurer is contractually obligated to defend an insured in an underlying lawsuit, we have long employed the aptly named 'comparison test,' in which we compare the allegations in the underlying complaint with the terms of the applicable insurance policy to determine whether the complaint falls within the policy's coverage." *Barnie's Bar & Grill, Inc. v. U.S. Liability Ins. Co.*, 2016 ME 181, ¶ 6, 152 A.3d 613.  In other words, the court compares the allegations in the complaint with the terms of the insurance policy to determine if "there exists any legal or factual basis which could be developed at trial which would obligate the insurers to pay under the policy." *Auto Europe*, 321 F.3d at 65 (quoting *United Bank*

---

significant relationship to the transaction and the parties." *Auto Europe*, 321 F.3d at 65 (quoting *Baybutt Construc. Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914, 918 (Me. 1983), *overruled on other grounds*, *Peerless Ins. Co. v. Brennan*, 564 A.2d 383 (Me. 1989)).  As SLD wrote, "[i]n the present case, the Policy was delivered in the State of Maine to a Maine insured to provide coverage for a Maine risk." *SLD Mot.* at 3.  The parties briefed Maine law, and the Court agrees that Maine substantive law applies.

*v. Chicago Title Ins. Co.*, 168 F.3d 37, 39 (1st Cir. 1999) (quoting *NE Props, Inc. v. Chicago Title Ins. Co.*, 660 A.2d 926, 927 (Me. 1995)).  "In construing insurance policies, exclusions are disfavored, and [Maine courts] construe them strictly against the insurer."  *Hall v. Patriot Mut. Ins. Co.*, 2007 ME 104, ¶ 11, 942 A.2d 663.

## V.   DISCUSSION

In its analysis of these motions, the Court applies the Maine Supreme Judicial Court's "comparison test," comparing the allegations of the Hilton Complaint with the terms of the Crum & Forster insurance policy to determine whether the allegations contained in the Complaint fall within the policy's provisions and exclusion.  Here, there has been no disagreement that, but for the Worker Injury Exclusion, Crum & Forster's Commercial General Liability Policy would afford a defense to SLD.

The Court turns to the exclusion.  The parties have also not debated whether Mr. Hilton's status as an independent contractor would have fit under one of the excluded categories, probably "temporary worker," since he was working as an independent contractor for Mr. Meier, and the Crum & Forster policy excludes from coverage a bodily injury to a temporary worker working for an independent contractor to SLD.  Based on the language of the Worker Injury Exclusion, a straightforward analysis of the provisions of the insurance contract and the allegations in the underlying complaint suggest that Mr. Hilton's injuries were excluded from the Crum & Forster policy's coverage.

But the law is rarely so simple.  Here, as SLD has argued, it matters what causes of action Mr. Hilton alleged in the underlying lawsuit.  The critical language appears in both the First Circuit case of *Auto Europe* and the Maine Law Court case of *Gervais*.  In *Auto Europe*, the First Circuit wrote:

> Here, by contrast, not only does the cause of action at issue - the Maine UTPA - permit liability in the absence of an intent to deceive, but Maine law also broadly extends the duty to defend to claims that could be developed either legally or factually at trial so as to fall within the policy's coverage.  Like the district court, we think it certainly possible in this case that the facts as developed at trial would reveal an improper practice that was unaccompanied by an intent to deceive.  Thus, even if a jury rejected the Harter plaintiffs' precise theory of deliberate misrepresentation, they would retain the possibility of recovery under the UTPA. CI consequently is obliged to defend the Harter lawsuit.

321 F.3d at 68.  In *Auto Europe*, the First Circuit also cited *Gervais*, the Maine Law Court case in which the Maine Supreme Judicial Court wrote:

> Because the general allegations in the Lavoies' complaint could establish that the alleged emotional distress was an unintended consequence of Gervais's conduct while still supporting each element of the tort, the Lavoies' complaint was based on an occurrence, as that term is used in the policy.  Similarly, because Gervais may be found to have intentionally inflicted emotional distress without subjectively intending or foreseeing the alleged distress suffered by Lavoie, the exclusion for intended or expected bodily injury is inapplicable.

*Gervais*, 715 A.2d at 942.

SLD repeatedly stresses that Mr. Hilton's status as an independent contractor is not a necessary element of the tort of negligence.  According to the Maine Law Court, "[a] cause of action for negligence has four elements: (1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury." *Bell v. Dawson*,

15

2013 ME 108, ¶ 17, 82 A.3d 827 (quoting *Est. of Smith*, 2013 ME 13, ¶ 16, 60 A.3d 759).  To sustain a claim for negligence, a plaintiff bears the burden to establish that he is owed a duty of care by the defendant and the defendant breached the duty, causing damages.  *Durham v. HTH Corp.*, 2005 ME 53, ¶ 8, 870 A.2d 577 (citations omitted).

Be that as it may, the crux of the coverage dispute is resolved by the actual causes of action the Hilton Complaint alleges against SLD, each a subcategory of the general claim of negligence, which necessarily rely on Mr. Hilton's status as an independent contractor.[4]  The resolution of the coverage issue in each count against SLD focuses on the duty element.  A plaintiff bears the burden to establish a prima facie case for each element of a negligence cause of action, including that a duty existed and that the duty was breached, proximately causing damages.  *Durham*, 2005 ME 53, ¶ 8, 870 A.2d 577 (citations omitted).  A party has a duty of care when he or she "is under an obligation for the benefit of a particular plaintiff."  *Quadrino v. Bar Harbor Banking & Tr. Co.*, 588 A.2d 303, 304 (Me. 1991) (citing *Joy v. E. Me. Med. Ctr.*, 529 A.2d 1364, 1365 (Me. 1987)).  Whether a duty of care exists is a legal question.  *Pelletier v. Fort Kent Golf Club*, 662 A.2d 220, 221-22 (Me. 1995) (citing

---

[4]     Although the Court has focused on the specific types of negligence alleged in the Complaint—premises liability; employer supervisory negligence and contractor selection liability; negligent hiring, training, and supervision—the result would be the same if a Mr. Hilton had alleged only a general negligence count, because he would still have to prove under a general negligence count that SLD owed him a duty and under a general negligence theory, the duty would have to arise out of his status as an independent contractor to SLD's contractor, Hans Meier.  Nevertheless, the Court has analyzed the allegations in the Hilton Complaint, not theories that do not appear in the Complaint.  In performing the comparison test, a court "may neither 'read extrinsic facts or allegations into an underlying complaint' nor 'selectively read facts or allegations out of that complaint in order to conclude that the insurer has a duty to defend.'"  *Med. Mut. Ins. Co. v. Burka*, 899 F.3d 61, 68 (1st Cir. 2018) (quoting *Barnie's Bar & Grill*, 2016 ME 181, ¶ 7, 152 A.3d 613)) (emphasis in *Med. Mut.*).

16

*Morrill v. Morrill,* 616 A.2d 1272, 1274 (Me. 1992)). "A defendant is entitled to judgment as a matter of law on a negligence claim if that defendant owes no duty to the plaintiff." *Budzko v. One City Ctr. Assocs. Ltd. Partn.*, 2001 ME 37, ¶ 10, 767 A.2d 310.

Among the elements to prove negligence, the coverage question here hinges on the nature of the duty Mr. Hilton has alleged, and the Court concludes that the duty, based on the causes of action Mr. Hilton alleged in all three counts against SLD in his Complaint, necessarily depends as an element upon his status as an independent contractor of Mr. Meier on behalf of SLD. Mr. Hilton's Complaint contains three distinct counts against SLD, each sounding in negligence: 1) Count III, duty of a general contractor; 2) Count V, negligent hiring, retention, and supervision; and 3) Count VI, premises liability. *Compl.* ¶¶ 15-45.

To explain how Mr. Hilton's claims necessarily implicate his independent contractor status, the Court will begin its analysis where this relationship is clearest: Count VI, premises liability. *Id.* ¶¶ 40-45. After repeating the prior allegations, Mr. Hilton alleged in Count VI:

41. SLD owned and occupied the premises.

42. Plaintiff was lawfully on the premises as SLD's licensee or invitee.

43. At said time and place, SLD owed Plaintiff a duty to exercise reasonable care in furtherance of providing reasonably safe premises for licensees and invitees like Plaintiff to perform their work.

44. SLD breached its duty to Plaintiff, having failed to exercise reasonable care in furtherance of providing a reasonably safe premises for its invitees and licensees, having hired agents to perform inherently dangerous work on the premises who were incompetent, inadequately

experienced, inadequately trained, and/or prone to imprudence, and who performed work on the Premises in unreasonably hazardous ways.

45.   As a direct and proximate cause of SLD's negligence, Plaintiff encountered a foreseeably hazardous condition on the Premises, thereby sustaining serious and lasting injuries as described above.

*Id.* ¶¶ 41-45.

In his Complaint, Mr. Hilton was careful to describe why he was on SLD's land, *id.* at ¶¶ 9, 42, because his lawful status as an independent contractor working for a contractor who was hired directly by SLD establishes the nature of SLD's duty to him. In *Poulin v. Colby College*, 402 A.2d 846 (Me. 1979), the Maine Supreme Judicial Court abandoned any distinction between invitees and licensees and established a unitary standard of care for landowners to those lawfully on the land. *Id.* at 851. However, the Maine Law Court retained a distinction between those lawfully on the land and trespassers to whom the landowner owed no duty. *See, e.g.*, *Inkel v. Livingston*, 2005 ME 42, ¶ 13, 869 A.2d 749 (Calkins, J. dissent); *Poulin*, 402 A.2d at 851 n.5 (explaining why landowner duties do not extend to adult trespassers). Similarly, Maine law imposes heightened standards of care on landowners in certain situations. *Cf. Belyea v. Shiretown Motor Inn*, 2010 ME 75, ¶ 11, 2 A.3d 76 (innkeeper owes a heightened duty to guests). Thus, Mr. Hilton's allegation that he was lawfully present on SLD's land as an invitee or licensee is not mere surplusage; rather, it addresses a necessary element of his premises liability claim against SLD: that it owed a legal duty to him, the legal standard applicable to his status as an independent contractor hired to perform work on the land. Contrary to SLD's emphatic position, the Court concludes that, to prove the premises liability count, Mr.

18

Hilton would be required to demonstrate his status as an engaged independent contractor at trial, and hence, Crum & Forster does not owe SLD a duty to defend the premises liability count.

The same logic readily applies to Count III, the duty of the general contractor count.[5] After repeating and reasserting prior allegations, this count contains three paragraphs:

> 25. As the general contractor on a multi-employer worksite, SLD . . . owed Plaintiff a duty to exercise reasonable care in furtherance of providing independent contractors with a reasonably safe environment in which to perform their work.
>
> 26. SLD . . . breached its legal duty to Plaintiff, having failed to ensure that its subcontractors were properly trained and competent, which conditions were necessary for Plaintiff to perform his work safely.
>
> 27. As a proximate result of negligence attributed to SLD . . ., Plaintiff suffered damages for which SLD . . . is legally obligated to pay.

*Compl.* ¶¶ 25-27.

The Court interprets Count III to allege that SLD owed Mr. Hilton, as an independent contractor to Mr. Meier, a duty to exercise reasonable care to provide Mr. Hilton with a reasonably safe environment to work. Count III then alleges that SLD failed in this duty by failing to ensure that Mr. Meier, as its subcontractor, was properly trained and competent. Mr. Hilton's status as an independent contractor of Mr. Meier and, by extension, SLD, must be an essential element of this cause of action

---

[5]     As the landowner and developer, SLD may not meet the typical meaning of the term "general contractor." *See General Contractor*, BLACK'S LAW DICTIONARY (10th ed. 2009) ("Someone who contracts for the completion of an entire project, including purchasing all materials, hiring and paying subcontractors, and coordinating all the work"). However, because "the duty to defend is so broadly conceived that even legally insufficient claims may give rise to a duty to defend if it possibly fits within the policy," the Court assumes for the purposes of this analysis that SLD fits within the definition of general contractor as alleged in the complaint. *Zurich Am.*, 325 F. Supp. 3d at 202 (D. Me. 2018).

because SLD's duty of a general contractor to Mr. Hilton, as alleged, depends upon his status as an independent contractor hired to perform work for the benefit of SLD. The sub-category of negligence implicated in Count III, the duty of a general contractor, necessarily requires proof that SLD owed this duty to Mr. Hilton, as an independent contractor to Mr. Meier, and hence, SLD's legal duty to Mr. Hilton flows from its contract with Mr. Meier and Mr. Meier's contract with Mr. Hilton.  Put differently, Mr. Hilton cannot prove the duty element of Count III unless Mr. Meier had hired him as an independent contractor to perform work for SLD.

If an unaffiliated individual had wandered onto SLD's property and had been struck by a falling tree, that person would not be able to proceed with this claim because this cause of action assumes "a duty to exercise reasonable care in furtherance of providing independent contractors with a reasonably safe environment in which to perform their work."  *Comp.* ¶ 25.  Thus, unless Mr. Hilton establishes at trial that he was an independent contractor of Mr. Meier to whom the general contractor, SLD, owes a duty of reasonable care, he could not prove a necessary element of his case.  Nor could he prove a breach of that duty unless he produced evidence of Mr. Meier's inadequate hiring practices for independent contractors like himself or employees like Mr. Johnson, and the deficient level of training and supervision he alleges that he and other Meier employees or independent contractors received from Mr. Meier.

The same analysis applies with equal force to Count V, the negligent hiring, retention, and supervision count against SLD. Count V contains six paragraphs. *Id.* ¶¶ 34-39. After incorporating prior allegations in paragraph 34, Count V alleges:

> 35. SLD hired Hans Meier to do work which involved a risk of physical harm to third parties unless it was performed skillfully and carefully.

> 36. Hans Meier, by and through himself and/or his agents, was engaged in such work when the Incident occurred.

> 37. SLD knew or should have known that Hans Meier was incompetent, inadequately experienced, inadequately trained, and/or prone to imprudence by virtue of facts and information available to it at the time of hire, and at all times subsequent thereto, up to and including when the Incident occurred.

> 38. SLD failed to exercise reasonable care in furtherance of employing a competent, adequately experienced, adequately trained, adequately supervised, and/or prudent agent when he hired and retained Hans Meier.

> 39. SLD's failure to exercise reasonable care in hiring, training, supervising, and/or retaining Hans Meier proximately caused or contributed to the Incident and Plaintiff's catastrophic injuries.

*Compl.* ¶¶ 35-39.

"The Law Court has recognized negligent hiring as a tort independent of negligent supervision but only in the context of hiring an independent contractor as stated in section 411 of the Restatement (Second) of Torts." *Robinson v. Cedars Nursing Care Ctr., Inc.*, 2012 Me. Super. LEXIS 154 at *7-8 (citing *Dexter v. Town of Norway*, 1998 ME 195, ¶ 10, 715 A.2d 169). This section of the Restatement contemplates employer liability for "physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor" in two hiring contexts: if the employer retained the independent contractor "to do work

which will involve a risk of physical harm unless it is skillfully and carefully done" or "to perform any duty which the employer owes to third persons." RESTATEMENT (SECOND) OF TORTS § 411 (AM. LAW INST. 1965).

The latter of these avenues for legal recourse follows the same logic applied in the Court's review of the prior counts: to be liable in tort, the employer must owe a duty to the injured person. Once again, to prove a violation of SLD's duty to Mr. Hilton under this cause of action, Mr. Hilton's status as an independent contractor hired to perform work on behalf of SLD would be a necessary element of proof. To state the obvious, proof on the existence of a duty element must include evidence as to Mr. Hilton's right to be present on the land at the time of the incident. To continue the prior analogy, as in Count III, if a trespasser had wandered onto SLD's property and been struck by a falling tree, that individual could not bring a claim against SLD for its allegedly negligent hiring of Mr. Meier. On the other hand, under Maine law, Mr. Hilton's lawful presence on the land imposes a duty of reasonable care on SLD in its hiring of Mr. Meier, which Mr. Hilton cannot prove without implicating his independent contractor status. Thus, Mr. Meier's hiring of Mr. Hilton as an independent contractor to perform work for SLD is necessarily a part of the proof on the duty element for Count V.

This analysis similarly applies to the other type of negligent hiring contemplated by the Restatement: when a contractor is retained "to do work which will involve a risk of physical harm unless it is skillfully and carefully done." *Id*. Commentary clarifies that "[c]lause (a) applies to any activity which a contractor is

employed to carry on *at or near any place in which others have a privilege to be* and which is not dependent upon the consent of the employer of the contractor." *Id*. cmt. d (emphasis added). To complete the analogy, a trespasser lacks the privilege to enter the land; thus, Mr. Hilton necessarily relies upon his status as an independent contractor retained by Mr. Meier and, by extension, SLD, to prove his rightful presence on the land and the existence of SLD's duty of care.

This conclusion comports with additional commentary provided by the Restatement. Comment (f), Work done on actor's land, describes "[o]ne of the most usual situations to which the rule stated in this Section applies is where a possessor of land entrusts the erection or repair of a building to an independent contractor," before clarifying that an employer faces potential liability for negligent hiring if the injured person "is a person to whom the possessor owes a duty to exercise reasonable care." *Id*. cmt. f. It then offers the specific examples of such a duty existing to a traveler on an adjacent highway or "to his invitee." *Id*. In each example, the duty owed to the injured person traces its roots to that person's right to be on the land and/or that person's employment or contractual relationship to the independent contractor. Stated again, a trespasser would not have that right; Mr. Hilton, then, necessarily predicates his lawful presence on the land on his status as an independent contractor engaged by Mr. Meier to perform work for the benefit of SLD.

Mr. Hilton similarly alleges in Count V that SLD acted negligently in its supervision of its independent contractor, Mr. Meier. In *Showers v. Bangor Hydro-Electric Co.*, No. CV-00-130, 2003 Me. Super. LEXIS 61 (Me. Super. Apr. 17, 2003), a

Maine Superior Court applied the elements from Section 414 of the Restatement (Second) of Torts to an analogous claim.[6]  This section states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Id.* § 414.  To bring this claim, Mr. Hilton must prove his status as a person "for whose safety the employer owes a duty to exercise reasonable care."  *Id.*  An employer owes no such duty to a trespasser; Mr. Hilton necessarily relies on the fact that Mr. Meier hired him as an independent contractor to perform work for SLD to demonstrate his right to be present on the land and, thus, as someone to whom SLD owes a duty of reasonable care in its supervision of Mr. Meier.

Even though "Maine employs an expansive concept of the duty to defend," the duty to defend "is not unbounded."  *Med. Mut.*, 899 F.3d at 67; *see True N. Me.*, 2019 U.S. Dist. LEXIS 25767, at *9 ("While broad, the duty to defend is not without limits").  "An insurer may refuse to defend an insured if the allegations contained in the underlying complaint 'fall entirely' within a policy exclusion."  *True N. Me.*, 2019 U.S. Dist. LEXIS 25767, at *9 (citing *Prime Tanning*, 750 F. Supp. 2d at 202) (stating that if a policy "exclusion denies general coverage under the policies, [the insurer] does not have a duty to defend [the insured]" unless an exception to the exclusion

---

[6]     Despite its reference in *Showers*, it remains unclear whether Maine has adopted negligent supervision of an independent contractor as a cognizable cause of action.  The Court takes no position on this issue, but proceeds, for the purpose of this duty to defend analysis, under the assumption that this tort is viable. *See Zurich Am.*, 325 F. Supp. 3d at 202 (D. Me. 2018) (confirming that "the duty to defend is so broadly conceived that even legally insufficient claims may give rise to a duty to defend if it possibly fits within the policy").

applies); *see City of S. Portland v. Me. Mun. Ass'n Prop. & Cas. Pool*, 2017 ME 57, ¶ 7, 158 A.3d 11 ("A factual allegation in the complaint that would give rise to damages may not trigger the duty to defend if the allegations fall within an applicable exclusion"). As noted earlier, in performing the comparison test, a court "may neither 'read extrinsic facts or allegations <u>into</u> an underlying complaint' nor 'selectively read facts or allegations <u>out of</u> that complaint in order to conclude that the insurer has a duty to defend.'" *Med. Mut.*, 899 at 68 (quoting *Barnie's Bar & Grill*, 2016 ME 181, ¶ 7, 152 A.3d 613) (emphasis in *Med. Mut.*). Performing the Maine Law Court's comparison test, the Court concludes that Crum & Forster owes no duty to SLD to defend the Hilton Complaint.

This means that Count III of SLD's complaint against Crum & Forster, the Maine Unfair Claims Settlement Practices Act count under 24-A M.R.S. § 2436-A, must fail because it is premised on Crum & Forster's inappropriate denial of coverage. *First Am. Compl.* ¶¶ 24-26. The Court must also deny SLD's demand for attorney's fees for the same reason. *Id.*

## VI.   CONCLUSION

The Court DENIES Plaintiff/Counterclaim Defendant Sebago Land Developers, Inc.'s Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) (ECF No. 24) and GRANTS Defendant/Counterclaim Plaintiff Crum & Forster Specialty Insurance Company's Motion for Judgment on the Pleadings (ECF No. 25). The Court ORDERS Judgment to issue in favor of Counterclaim Plaintiff Crum &

Forster Specialty Insurance Company on its Counterclaim against Counterclaim Defendant Sebago Land Developers, Inc.

SO ORDERED.

/s/ John A. Woodcock, Jr.
 JOHN A. WOODCOCK, JR.
 UNITED STATES DISTRICT JUDGE

Dated this 5th day of September, 2024.

26